616 A.2d 198

Thomas R. GILL and Hacer Gill, husband and wife

v.

TAX CLAIM BUREAU. OF MONROE COUNTY
and Pocono Hickory Lane, Inc., Appellants.

Commonwealth Court of Pennsylvania.

Argued Sept. 16, 1992.

Decided Oct. 15, 1992.

Steven D. Gladstone, for appellants.

Gerard J. Geiger, for appellees.

Before PALLADINO and McGINLEY, JJ., and BARRY, Senior Judge.

BARRY, Senior Judge.

Pocono Hickory Lane, Inc. (appellant), appeals an order of the Court of Common Pleas of Monroe County which granted

a petition to set aside a tax sale filed by Thomas R. Gill and Hacer Gill, husband and wife. We affirm.

The Gills owned a parcel of property as tenants by the entireties located in Coolbaugh Township, Monroe County. When the Gills failed to pay real estate taxes due and owing in 1989, the Monroe County Tax Claim Bureau scheduled a tax sale. As required by Section 602 of the Real Estate Tax Sale Law, Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. § 5860.602, the Tax Claim Bureau sent notice of the pending tax sale to each of the Gills by certified mail, restricted delivery and return receipt requested. Mrs. Gill signed both for her notice and the notice sent to her husband. Although the Tax Claim Bureau did not receive a return receipt from Mr. Gill, it proceeded with the sale without sending notice of the sale to Mr. Gill by first class mail as provided in 72 P.S. § 5860.602(e)(2). Appellant purchased the property for $1,280.00 at the tax sale of September 17, 1991.

When the Gills were informed that the parcel had been sold at a tax sale, they filed a timely petition to set aside the tax sale. At the hearing held on the petition, the appellant acknowledged that Mrs. Gill had signed the return receipt card on the notice sent to Mr. Gill. The appellant also acknowledged that no notice was sent by first class mail after the return receipt card of Mr. Gill was returned to the Tax Claim Bureau with Mrs. Gill's signature. Because of these facts, the trial court granted the petition to set aside the sale based upon this Court's decision in *Mangine Appeal,* 87 Pa.Commonwealth Ct. 47, 487 A.2d 45 (1985); the trial court also ordered that appellant pay the Gill's legal fee. This appeal followed.

In *Mangine,* the facts were identical to the facts of the present case. In that case, the trial court refused to set aside a sale and this Court determined that the failure to comply with the requirements of Section 602 required that the sale be set aside. As we explained, "The notice provisions of the Act must be strictly construed in order to guard against the deprivation of property without due process of law." *Id.,* at 51, 487 A.2d at 47. As it did at the trial level, the appellant

does not argue that the decision in *Mangine* was erroneous and should be overruled. Rather the appellant argues that we should decide a question that was never specifically asked or answered in that case, i.e., can the interest of the spouse who properly signed the return receipt card on his or her notice of the tax sale be recognized as valid to sell the interest of the other spouse at tax sale? Rather than attempt to paraphrase the appellant's argument in this regard, we will quote from the appellant's brief:

It is respectfully suggested that when our Supreme Court in *Teslovich* [*v. Johnson*, 486 Pa. 622, 406 A.2d 1374 (1979),] required individual notices to 'each owner' and thus determined that the Tenancy by the Entireties ownership was comprised of two different people, each entitled to notice, then each of of those individuals was subject to having properly received the tax sale notice. Thus, if the Tenancy by the Entirety has to be served by delivering the notices to two separate owners, it is respectfully suggested that when one of those owners receives proper notice, the interest of that owner can be validly sold by the Tax Claim Bureau.

Although it is recognized that a Tenancy by the Entirety can not be unilaterally severed by one of the parties voluntarily, in view of the *Teslovich* holding that the Tenancy by Entirety ownership is *not, for tax sale purposes,* the single unity of ownership that has normally been recognized in most cases, but rather, is a ownership interest of two people, husband and wife, it must logically follow that one of those two people can be served for their individual interest in the tax sale setting. So long as Teslovich recognizes that the Tenancy by the Entirety is not a single unit to be served with only one notice to only one 'owner' then the two separate people who comprise the single unity of ownership must be susceptible to individual service. If the Courts adopt otherwise, the very purpose of the Tax Sale Act, to collect delinquent revenues, is thwarted by the simple actions of a husband signing for both cards, or a wife doing the same.

(Appellant's brief, p. 10.) We must reject the appellant's arguments out of hand.

There is nothing in the Supreme Court's opinion in *Teslovich* which suggests that a tenancy by the entireties is not a tenancy by the entireties for tax sale purposes. The court explained part of its reasoning for requiring individual notice to all owners of property:

> To interpret section 602 of the Real Estate Tax Sale Law to permit a single notice to tenants by the entireties is to countenance the taking of a citizen's property under circumstances such as those presented here. Such a taking is completely unrelated to the protection of local governments and amounts to no more than a trap for unwary taxpayers.

*Teslovich.* We believe that the court in *Teslovich* was doing no more than recognizing the long-standing rule that under a tenancy by the entireties, husband and wife each has an undivided interest in the whole property. *Madden v. Gosztonyi Savings & Trust Co.,* 331 Pa. 476, 200 A. 624 (1938). As both husband and wife have an undivided interest in the whole property, due process requires that each be given notice of a tax sale and Section 602 recognizes these obvious due process concerns.

Appellant argues that we should reverse the trial court and order that the property now be considered as owned by Mr. Gill and the appellant as tenants in common. Appellant cites no authority for such a novel proposition, nor do we know of any. Furthermore, the differences between tenancies by the entireties and tenancies in common are striking, *Wakefield v. Wakefield,* 149 Pa.Superior Ct. 9, 25 A.2d 841 (1942), and we cannot change the incident of ownership in this property vis a vis Mr. Gill without express authority to do so. We must reject the appellant's arguments out of hand.

The trial court also ordered that appellant pay the Gills' legal fees. 42 Pa.C.S. § 2503(7) permits the award of counsel fees where a participant to litigation engaged in conduct which was "dilatory, obdurate or vexatious". 42 Pa.C.S. § 2503(9) also permits such an award for conduct which is "arbitrary, vexatious or in bad faith". In its opinion, the trial court made

the following statements. "Since the tax sale record itself makes apparent that [appellant's] opposition to the Petition [to set aside the tax sale] is frivolous and without merit, we also conclude that an award of counsel fees ... is appropriate." (Opinion of the trial court, 3/30/92, p. 5.) The court also stated that "[t]he conduct of [appellant] in requiring counsel for [the Gills] to participate in a hearing where the face of the record made the disposition of the matter apparent, is both vexatious and in bad faith authorizing the imposition of counsel fees". *Id.*

It must be noted that, at both the trial level and on appeal, appellant had conceded that *Mangine* was indistinguishable from the present case. As our prior discussion shows, we agree with the trial court that the position taken by appellant is indeed frivolous. Furthermore, a finding that a litigant has engaged in conduct which is dilatory, obdurate, vexatious or in bad faith and is thus responsible for counsel fees will be disturbed on appeal only if the trial court has abused its discretion. *See State Farm Mutual Automobile Insurance Co. v. Allen,* 375 Pa.Superior Ct. 319, 544 A.2d 491 (1988). As we cannot conclude that the court abused its discretion, we affirm.

## ORDER

NOW, October 15, 1992, the order of the Court of Common Pleas of Monroe County, dated March 30, 1992, at No. 4855 Civil 1991, is affirmed.